Risner v. Commonwealth.

CASE 91—INDICTMENT—MAY 10.

## Risner v. Commonwealth.

APPEAL FROM MAGOFFIN CIRCUIT COURT.

95  539
e110  853
110  854

95  539
e127  90

1. SELECTION OF JURY.—Where, under the existing jury law, the jury commissioners were not directed by the court, as the statute prescribes, to place in the drum or wheel-case the names of two hundred persons qualified for jurors, which was the number required for the particular county according to its population, but instead were required to and did select and put in the drum or wheel-case only fifty names altogether, and from that list the requisite number of grand and petit jurors was obtained. there was such a failure to comply with the law as entitles one who was tried and convicted by a jury made up from the list of petit jurors thus obtained to a new trial, although it does not directly or certainly appear that he was substantially prejudiced thereby.   And the fact that after the list of twenty petit jurors thus obtained was exhausted in the effort to make up the jury to try the defendant, the jury commissioners, being reconvened, were directed to, and did, place in the drum or wheel-case the names of two hundred persons, from which the trial jury was completed, did not cure the original failure to do so.

2. SAME.—There having been a failure to appoint jury commissioners at the previous term of the court, it was in the power of the court to then

proceed to obtain grand and petit jurors in the mode prescribed by the statute, and to that end to appoint jury commissioners.

A. ARNETT for appellant.

The jury that tried the case was not selected and impaneled in the manner prescribed by law.

WM. J. HENDRICK, Attorney-General, for appellee.

As to whether the jury was secured in accordance with law, see chapter 210, page 948 of Acts 1891-2-3, and especially section 27 of article 4 of that Act.

JUDGE LEWIS delivered the opinion of the court.

Samuel Risner and Leander Risner were jointly indicted for murder and each convicted of manslaughter, though the latter only appeals.

The only ground for reversal that we will consider or that, in our opinion, is sufficient to authorize reversal, is failure of the lower court to obtain the jury by whom they were tried in the mode prescribed by "An Act concerning juries," which was approved May 22, 1893.

The transcript in this case is made out so unskillfully that we have had some difficulty in ascertaining precisely when and in what succession the various orders on the subject were made by the lower court, for some of them are not even dated. And to increase the confusion the original transcript did not contain all the orders, the omitted portion having been added since it was filed here.

It, however, appears that January 29, 1894, being the first day of the term of court, the following order was made: "It appearing to the satisfaction of the court that the grand and petit jurors, selected and drawn by the jury commissioners, appointed at the October term, 1893, of this court, and summoned by the sheriff as grand and petit jurors for the present term of this court, were not

selected and summoned as required by law, it is there-
fore ordered that all said jurors, grand and petit, be
discharged as such for the present term of this court."

On the same day, January 29th, an order was made
appointing three jury commissioners for the period of
one year from that date, who were directed to draw *twenty*
names for grand jurors and *thirty* names for petit jurors at
that term of court. And the commissioners on that day
delivered to the judge in open court the jury lists under seal
for that term, which were then delivered to the sheriff, who
was directed to summon the persons named to appear on
the *third* day of the term of court to serve as grand and
petit jurors.  On fifth day of the term, being February
2, 1894, was made the following order: "All the names
in the drum or jury-wheel being drawn by the judge of
court, and the jury not being completed, it is ordered that
the jury commissioners reconvene for the purpose of
selecting other jurors." Following that order is a recital
that "said commissioners, after selecting one hundred
names and placing them in the jury-wheel, returned same
into court and delivered the same to the judge, who drew
from said wheel one hundred names, as required by law,
to serve as jurors at this term, and the clerk is ordered to
certify said list to the sheriff who is directed to summon
each and all of said one hundred jurors."

In another part of the transcript, however, it is recited
that "said commissioners delivered in open court to the
judge the drum or wheel-case containing the *two* hundred
names and the key and slips not used.  Thereupon the
court drew from said drum or wheel-case, *one hundred*
names, one at a time, and recorded each name upon a sheet
of paper in the order which they were drawn, and certified

the same and delivered 'the list to the sheriff, who was directed to summon all whose names were on the list, which he did.    And out of said list as drawn and summoned, the jury was completed."

By section 1 of the existing statute on the subject (Section 2241 of the Kentucky Statutes), the circuit judge of each county was required at the first regular term of the circuit court therein after the act took effect and annually thereafter, to appoint three proper persons as jury commissioners for one year.    And the process by which they were required to obtain the necessary number of jurors, is to take the last returned assessor's book for the county and from it carefully select, from intelligent, sober, discreet and impartial citizens, housekeepers in different portions of the county, a number of persons corresponding to population thereof, the number required for Magoffin County, where appellant was tried, being not less than two hundred; each name so selected to be written on a slip of paper, and the slips deposited in a revolving drum or wheel-case, from which is to be drawn a sufficient number of names to procure twenty persons qualified to act as grand jurors, and thirty persons to act as petit jurors; each list to be recorded on paper and placed in a sealed envelope directed to the judge of the circuit court, and constitute the grand and petit jurors for the ensuing term of court.    When the lists have been thus completed it is the duty of the commissioners to lock the drum or wheel-case containing the remaining names and deliver it to the judge of court, who shall then place it and the sealed envelopes in custody of the clerk.

Section 2 provides that if at any time it becomes apparent to the judge the names in the drum or wheel-case will be exhausted before the next annual selection of commis-

sioners, he, by an order entered of record, shall reconvene the commissioners, who shall select and place in said drum or wheel-case the number of names of qualified grand and petit jurors, stated in the order of the court reconvening them.

Section 3 provides that at each term, within one year after commencement of that at which the commissioners were appointed, the judge of the court shall draw from said drum or wheel-case the names of twenty qualified grand jurors and thirty petit jurors, and shall place the lists in separate sealed envelopes from which the next grand and petit jurors are to be drawn.

Though it does not appear in what respect the jurors were selected and drawn illegally at the October term, 1893, we suppose it was because done in pursuance of the General Statutes which were repealed by the statute of May, 1893.   But whatever may have been the ground for the order of court discharging them, which it must be presumed was properly made, the alternative was presented to either supply their places or dispense altogether with both grand and petit jurors for that term of court. And though such condition as resulted from that order is not in express terms of the existing statute provided for, we think it was in the power of the court to then proceed to obtain grand and petit jurors in the mode prescribed by the statute and to that end appoint jury commissioners, which seems not to have been done as required at the October term, 1893.   But the jury commissioners were not directed by the court, as the statute prescribes, to place in the drum or wheel-case the names of two hundred persons qualified for jurors, from which to draw and return to court twenty grand and thirty petit jurors.   But

instead they, under order of court, selected and put in the drum or wheel-case only fifty names altogether and from that list the requisite number of grand and petit jurors was obtained; and it was only after the list of twenty petit jurors thus obtained was exhausted in the effort to make up the jury to try appellant, which was only partially successful, that the jury commissioners, being reconvened, were directed to and did place in the drum or wheel-case names of two hundred persons as required from which number the trial jury was completed.

The effect of the first order was to give to the jury commissioners more dangerous power and wider discretion in the matter of obtaining jurors than is authorized by either the evident policy or plain language of the statute. And while it is not made to directly or certainly appear appellant was thereby substantially prejudiced, still he had the right to insist upon being tried by only a jury obtained according to the statute, which was passed for the purpose of securing fair and impartial jurors. And to more effectually accomplish that end the names of at least two hundred persons are required in a county of the population of Magoffin, to be selected and placed by the commissioners in the drum or wheel-case and thence blindly drawn by them or the judge of court, as the case might be. Indeed, that particular provision can not be disregarded in any substantial particular without defeating one of the principal purposes of the statute.

It seems to us that error of the court imperatively requires it, and the judgment is therefore reversed for new trial.